# APPENDIX A

# Westlaw.

Slip Copy                                                                                                           Page 1
Slip Copy, 2007 WL 1575265 (S.D.N.Y.)
(Cite as: Slip Copy)

H 3947 Austin Boulevard Associates, LLC v.
M.K.D. Capital Corp.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.3947
AUSTIN BOULEVARD ASSOCIATES, LLC,
Plaintiff,
v.
M.K.D. CAPITAL CORP., et al., Defendants.
No. 04 Civ. 8596(NRB).

May 30, 2007.

MEMORANDUM AND ORDER
BUCHWALD, J.
*1 Plaintiff 3947 Austin Boulevard Associates, LLC ("plaintiff") filed this action on November 1, 2004, against defendants M.K.D. Capital Corporation ("M.K.D."), Avram Lebor, Wayne Schaffner ("Schaffner"), Donald M. Klabin ("Klabin"), Martin Epstein ("Epstein"), American Floral Company, LLC a/k/a Floragraph, LLC and d/b/a Flower.com, Radius Capital, LLC ("Radius"), Sara Lebor, Annette Lebor, Michael Lebor, and David Lebor (collectively, "defendants") asserting various claims.[FN1] Plaintiff's claims arise out of its plans to develop and operate a self-storage facility and business at 3947 Austin Boulevard, Island Park, New York. M.K.D. had represented itself to potential borrowers as a lender and mortgage banker able and prepared to provide multimillion dollar loans to finance real estate and other development projects. Plaintiff and M.K.D. entered into a written agreement in the form of a "Commitment Letter" in late December of 1999. By the terms and provisions of the Commitment Letter, M.K.D. agreed to provide plaintiff a credit facility in the amount of $5,900,000.00 to be funded at the closing of the 3947 Austin Boulevard property, to be used both for the acquisition of the property and the construction of the facility thereon. In consideration of this agreement, plaintiff tendered to M.K.D. a "refundable Commitment Fee" in the amount of $59,000. For months, defendants sent plaintiff reassurances via mail, telephone conversations, and email that they were close to securing funds for the project, and plaintiff in the interim accrued a variety of expenses in anticipation of the loan closing. However, defendants never secured the requisite funds for plaintiff, and the project never came to fruition.

FN1. The claims against the defendants not dealt with individually herein have been resolved. The claims against Michael Lebor were discharged pursuant to his filing for bankruptcy. The claims against Flower.com in this matter were commenced after Flower.com had filed for bankruptcy, and accordingly they have been removed from this action. On June 20, 2006, the claims against defendants Sara, Annette, and David Lebor were dismissed pursuant to a settlement reached with plaintiff. On April 26, 2007, the claims against Martin Epstein were dismissed pursuant to a stipulation and discontinuance.

On December 27, 2005, plaintiff moved for default judgment against defendants M.K.D., Avram Lebor, Schaffner, and Radius. Lebor served as the president and principal owner of M.K.D., and Schaffer was M.K.D.'s executive vice president. It appears that Lebor and Schaffer used Radius in their scheme to serve as a potential facilitator and source of funding for the loans. Plaintiff's motion was unopposed, and on March 24, 2006, we entered default judgments as to liability against M.K.D., Lebor, Schaffner, and Radius ("defaulting defendants"), but delayed assessing damages at that time to await the disposition of the claims against all defendants. See 3947 Austin Blvd. Associates, LLC v. M.K.D. Capital Corp., No. 04 Civ. 8596(NRB), 2006 WL 785272 (S.D.N.Y. Mar. 24, 2006). What remains of this case is the entry of judgment as to the claims against Donald M. Klabin, who aided Lebor and Schaffner in their scheme to mislead borrowers and has not answered the amended verified complaint, and the damages that should be awarded to plaintiffs against the defaulting defendants, an issue which we reserved when we entered defaults against M.K.D., Lebor, Schaffner, and Radius.

I. Judgment as to Liability against Klabin

We first turn to the claims pled against Mr. Klabin. Counts One and Two allege that Klabin, along with the other defendants, committed both substantive and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 2
Slip Copy, 2007 WL 1575265 (S.D.N.Y.)
**(Cite as: Slip Copy)**

conspiratorial violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, using M.K.D. as the "enterprise" as defined by 18 U.S.C. § 1961(4). Count Three alleges that all defendants, including Klabin, engaged in common law fraud and fraudulent inducement. In light of the standards articulated in our previous Memorandum and Order in this case, see *3947 Austin Blvd. Associates,* 2006 WL 785272, at *1, we find entry of a judgment as to liability appropriate for the claims against Klabin.[FN2] Accordingly, we turn to the damages sought by plaintiff in its submissions.

> FN2. We note that upon further review of the complaint in this case, we have reservations about the conclusions reached in our previous decision, especially with regard to the plaintiff's common law fraud and fraudulent inducement claims in light of New York law governing fraud arising out of breach of contract. However, given our award of damages under RICO, it is not necessary to revisit the issue further.

II. Damages Sought

A. Compensatory Damages from Breach of Contract against M.K.D.

*2 Plaintiff first seeks compensatory damages for M.K.D.'s breach of the conditions of the Commitment Letter, wherein M.K.D. agreed to provide to plaintiff a credit facility in the total of $5,900,000.00.[FN3] Under New York law, damages for a breach of contract are "normally limited to the amount necessary to put the plaintiff in the same economic position plaintiff would have occupied had the breaching party performed the contract." *Topps Company, Inc. v. Cadbury Stani S.A.I.C.,* 380 F.Supp.2d 250, 261 (S.D.N.Y.2005) (citing *Wallace Steel, Inc. v. Ingersoll-Rand Co.,* 739 F.2d 112, 115 (2d Cir.1984)). Such compensatory damages consist of: (1) restitution interest, which represents any benefit which the non-breach party bestowed upon the breaching party; (2) reliance interest, which represents any detriment which the non-breaching party suffered due to its reliance on the agreement; and (3) expectation interest, which represents any gain the non-breaching party would have realized from the contract but for the breach. *Id.* at 261 n. 11.

> FN3. We specifically note that none of plaintiff's submissions assert that there should be a piercing of M.K.D.'s corporate veil.

Under this theory, plaintiff is entitled to recover the $59,000 Commitment Fee made by 3947 Austin Boulevard to M.K.D. as consideration for the Commitment Letter, *see* Affidavit of Lynda M. Mekeel, dated December 21, 2005 ("Mekeel Aff.") ¶¶ 28-29, as this would constitute plaintiff's restitution interest. In addition, as reliance interest, plaintiff should receive (1) $279,704.24, which represents payments made by plaintiff to third parties, including but not limited to attorneys, architects, and engineers; and (2) $132,500.00, which represents brokerage fees paid by plaintiff. Both figures represent expenditures made by plaintiff in anticipation of the acquisition and development of the property. *See* Mekeel Aff. ¶¶ 31-33, 36, Ex. H & accompanying schedules.

However, plaintiff is not entitled to recover lost profits as an expectancy interest. For breach of contract, a plaintiff is entitled to lost profits only if he can establish both the existence and amount of such damages with reasonable certainty, and that the lost profit damages were within the contemplation of the parties at the time the contract was made. *Schonfeld v. Hilliard,* 218 F.3d 164, 173 (2d Cir.2000) (citing *Kenford Co., Inc. v. Erie County,* 67 N.Y.2d 257, 261, 502 N.Y.S.2d 131, 132 (1986)). Projections of future profits which are made on the basis of a "multitude of assumptions" that require "speculation and conjecture" with few known factors do not provide the requisite certainty for recovery. *Id.* In addition, evidence of lost profits for a new business venture must receive greater scrutiny in light of the fact that there is no business history or track record upon which to base any estimate of lost profits. *Id.* For its estimates of lost profits, plaintiff relies upon the estimates of Sydney James Chiswell, an expert in the self-storage industry. Chiswell prepared a feasibility report in 1999 for plaintiff to evaluate the proposed development of the self-storage unit facility at the 3947 Austin Boulevard site. However, the estimates of lost profits made by Chiswell do not meet the requisite certainty for plaintiff to recover,[FN4] especially in light of the fact that the 3947 Austin Boulevard project would have constituted a new business venture. Accordingly, we deny plaintiff's request for damages for lost profits.

> FN4. For instance, Chiswell's report makes a

variety of assumptions, including: (1) initial lease-up rates of 4.25% per month, reducing to 3% per month until the project reaches 50% occupancy and then 2.25% per month until 85% occupancy; (2) a larger average unit size than was recommended in the architectural drawings; (3) 1999 rental rates for units for the then-current market conditions; (4) a 4% inflation factor; and (5) administration fees charged without security deposit to customers. *See* Chiswell Report § 5. Further, it appears that although Chiswell discussed the current market conditions competitors in his estimates, he did not take into account the potential for entry into the market. *See id.* § 4. In addition, Chiswell notes that there was no environmental assessment conducted on the building, *see id.* § 1, nor any inclusion of tax assessments, construction period interest debt, or permanent mortgage assumptions in his estimates, *see id.* § 5. In light of the multitude of limitations presented by Chiswell's projections, we find that the lost profit estimate to lack the requisite certainty required for recovery.

B. Civil RICO Damages

*3 "[C]ongress intended the basic award under civil RICO to compensate the plaintiff for injury to his property or business."*Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir.1988)* (citing 18 U.S.C. § 1964(c)), *cert. denied*490 U.S. 1007 (1989). Specifically, civil RICO damages are designed "to place the plaintiff in the same financial position he would have occupied absent the illegal conduct."*Id.* Thus, under civil RICO, plaintiff is entitled to recover the $59,000 "refundable Commitment Fee", payments made by plaintiff to third parties, including attorneys, architects, and engineers, which total $279,704.24, and brokerage fees totaling $132,500.00, all of which were out of pocket costs accrued to plaintiff in relation to the acquisition and development of the property. These figures total to $471,204.24, which when trebled pursuant to 18 U.S.C. § 1964(c) amounts to $1,413,612.72. [FN5]

> FN5. We acknowledge that in plaintiff's memorandum, it first asks for punitive damages for its fraud and contract claims, and in the alternative urges this Court to award punitive damages under civil RICO.

*See* Pl. Mem. at 9. In light of our awarding of treble damages under RICO, we decline to separately evaluate plaintiff's request for punitive damages, since we would not award punitive damages to plaintiff under either its fraud or contract claims in excess of the treble damages already awarded under the RICO claim.

With regard to lost profits, although the civil RICO statute does not bar their recovery if they constitute part of the "damages sustained" by a victim of civil RICO, recovery of lost profits is subject to the ordinary limitations concerning remoteness (or proximate cause) and speculativeness (or certainty).*Three Crown Limited Partnership v. Salomon Brothers, Inc., 906 F.Supp. 876, 891 (S.D.N.Y.1995); Sound Video Unlimited, Inc. v. Video Shack Inc., 700 F.Supp. 127, 142 (S.D.N.Y.1988)*. However, for the reasons discussed above in the context of the breach of contract, we believe that the estimates provided by plaintiff with regard to potential future profits are too speculative to support a lost profit recovery in the civil RICO context.

Lastly, plaintiff requests "any legal fees this court deems just, fair[,] and equitable."Mekeel Aff. ¶ 47. Although 18 U.S.C. § 1964(c) provides a statutory basis for the recovery of a reasonable attorney's fee as part of civil RICO remedies, plaintiff's attorneys have failed to provide contemporaneous time records which "specify, for each attorney, the date, the hours expended, and the nature of the work done."*Cruz v. Local Union No. 3 of Intern. Broth. Of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir.1994)* (citing *New York State Ass'n for Retarded Children Inc. v. Carey, 711 F.2d 1136 (2d Cir.1983)*, and *Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir.1986)*). Thus, we deny plaintiff's request for statutory attorney's fees without prejudice. [FN6]

> FN6. It may be the case that plaintiff has not moved for attorneys fees in light of the contingency fee agreement between plaintiff and counsel in this matter. *See* Mekeel Aff. 47.

*CONCLUSION*

For the reasons set forth above, plaintiff's motion for default judgment against defendant Donald M.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 1575265 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Page 4

Klabin is entered as to liability. Plaintiffs are entitled to judgment of $1,413,612.72 as against defendants M.K.D. Capital Corporation, Avram Lebor, Wayne Schaffner, Donald M. Klabin, and Radius Capital, LLC.

SO ORDERED.

S.D.N.Y.,2007.
3947 Austin Boulevard Associates, LLC v. M.K.D. Capital Corp.
Slip Copy, 2007 WL 1575265 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.