# APPENDIX C

# Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 1

Nwachukwu v. Chemical Bank
S.D.N.Y.,1997.
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Bernard NWACHUKWU, Plaintiff,
v.
CHEMICAL BANK, Defendants.
No. 96 CIV. 5118(KMW).

Aug. 6, 1997.

WOOD
*1 Plaintiff Bernard Nwachukwu ("Nwachukwu"), a citizen of Nigeria, sues Chemical Bank, a New York corporation, for damages arising out of debits made to Nwachukwu's account at Chemical Bank. Nwachukwu alleges that federal jurisdiction over this action is proper under the diversity statute, 28 U.S.C. § 1332(a). Chemical Bank now moves to dismiss Nwachukwu's amended complaint in its entirety, pursuant to Fed. R. 12(b)(1), alleging that, based on the facts alleged in Nwachukwu's complaint, there exists a legal certainty that Nwachukwu has failed to meet the amount in controversy requirement of 28 U.S.C. 1332(a). Additionally, defendant moves to dismiss plaintiff's second, third, fourth, fifth, and sixth causes of action based upon their failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, I grant defendant's motion.

*I. Background*

Briefly, this action arises out of activity in an account set up by Nwachukwu at Chemical Bank in March 1992. Nwachukwu alleges that in the summer and fall of 1995, workers at Chemical Bank conspired to deprive him of the funds held in his account, specifically debiting his account, on two separate occasions, in a total amount of $38,041.30. Additionally, Nwachukwu claims that Chemical Bank negligently violated its own internal rules by failing to compare the signature on the withdrawal document resulting in the debit to the signature of Nwachukwu on file with the bank. Nwachukwu also contends that Chemical Bank failed to establish or maintain adequate supervisory controls to assure that its own rules were followed.

Nwachukwu contends that the loss of that amount from his Chemical Bank account caused him damages in excess of $1,000,000.00. Such damages allegedly stem from the loss of profits by Nwachukwu due to his inability to engage in pre-arranged business ventures. Additionally, Nwachukwu claims that the loss of funds prevented a planned personal family vacation to Disney World, and caused him and his family emotional distress resulting in medical expenses of over $12,000.00.

*II. Analysis*

*A. Standard of Review*

The role of a district court in considering a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985). The court must accept as true the factual allegations made in the complaint, see LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir.1991) (citations omitted), and the complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

*B. Whether Plaintiff Has Met the Amount in Controversy Requirement of 28 U.S.C. § 1332(a)*

*2 Nwachukwu asserts six causes of action: (1) breach of contract, (2) negligence, (3) conversion, (4) intentional infliction of emotional distress, (5) money had and received, and finally (6) a nebulous claim requesting attorney's fees and punitive damages. Chemical Bank asserts that the latter five claims cannot be maintained in any court, and that the first claim cannot, alone, be maintained in this Court because damages with respect to that claim do not meet the requisite amount in controversy requirement of 28 U.S.C. § 1332(a). In order to determine whether

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

plaintiff has met that requirement, the Court must determine what claims plaintiff may pursue, and what damages are lawful for any sustainable claims.

*I. Breach of Contract*

Plaintiff's first cause of action is for breach of contract. Plaintiff asserts a claim of direct damages of $43,467.64. He also asserts lost profits in the amount of $1,000,000, special damages in the amount of $53,467.64, general damages in the amount of $1,000,000, and punitive damages of $2,500,000.

New York law offers two types of compensatory damages for contract and tort claims: general (direct) damages and special (consequential) damages. *See Vitol Trading S.A. Inc. v. SGS Control Services, Inc., 874 F.2d 76, 79 (2d Cir.1989)*. Plaintiff has clearly stated a viable cause of action for breach of contract; he alleges that defendant Chemical Bank debited his account in a wrongful manner that was not in accordance with the terms of the account. Were plaintiff to prevail on his breach of contract claim, he could recover general (direct) damages in the amount of any wrongful debit made by Chemical Bank to his account. Plaintiff alleges wrongful debits of $38,041.30.[FN1] Am. Comp. ¶ 19. Therefore, although plaintiff requests that $43,467.64 (the total amount plaintiff allegedly deposited, minus the amount that plaintiff himself withdrew) be restored to his account, Am. Comp. at 15, plaintiff is entitled to recover only the $38,041.30 that was wrongfully debited. The difference between the debits and the amount deposited and not used by plaintiff, approximately $6,000, apparently remains in plaintiff's account and is available for his use.[FN2] Plaintiff may not, therefore, recover *that* amount through this action. Plaintiff's additional claim for general damages of $1,000,000 [FN3] is unsupported by any facts in the complaint. I therefore find that plaintiff may recover, as general or direct damages for his breach of contract claim, only $38,041.30, plus interest.[FN4]

Plaintiff asserts a claim for consequential damages (lost profits) in the amount of $1,000,000, and a claim for special damages in the amount of $53,467.64. Am. Comp. at 15. Under New York law, which governs this action, special and consequential damages are recoverable only in limited circumstances. *Vitol,* 874 F.2d at 79. First, it must be demonstrated with certainty that the damages alleged were caused by the breach; second, the alleged loss must be capable of proof with reasonable certainty.

*Kenford Co., Inc. v. County of Erie,* 67 N.Y.2d 257, 261 (N.Y.1986). Additionally, recovery is permitted only when evidence supports a determination that the parties contemplated assumption by the defendant of liability for the damages at issue. *Kenford Co., Inc. v. County of Erie,* 73 N.Y.2d 312, 318 (N.Y.1989).

*3 Plaintiff first requests relief including "the profit in the amount of $1,000,000 plus interest, which would have otherwise accrued to the plaintiff but for defendant's actions herein." Am. Comp. at 15. Plaintiff's claim is based upon the alleged loss of profits stemming from his inability, due to the debiting of his account, to engage in several business ventures. These business ventures included (1) a contract which necessitated the purchase of two automobiles, (2) the purchase of tire equipment for a tire retread shop, and (3) an agreement to transport wheat offal from Nigeria to Morocco which required Nwachukwu's travel to Holland. However, none of these alleged business plans, the existence of which I assume for the purpose of this motion, satisfies the legal basis for damages resulting from business loss. Even assuming that the loss of the three aforementioned business opportunities is the direct result of Chemical Bank's actions in debiting Nwachukwu's account, the damages sustained by plaintiff with respect to the loss are highly speculative. The loss of income to plaintiff for each of these business ventures is not capable of proof with reasonable certainty. Additionally, there is simply no indication in the complaint that Chemical Bank was aware of each of these business ventures, or that Chemical Bank at any time assumed liability for the damages arising from plaintiff's inability to pursue the ventures. For these reasons, plaintiff's demand for $1,000,000 in lost profits stemming from his loss of business based upon defendant's alleged breach of contract is not sustainable.

Plaintiff does not specify what events enumerated in his complaint give rise to his claim for special damages in the amount of $53,467.64. It appears that the amount results from adding the amount of money that plaintiff alleges that he should now have in his Chemical Bank account ($43,467.64) to the amount of money ($10,000) that plaintiff spent on his trip from Nigeria to the United States. Am. Comp. ¶ 14. Only the latter amount, however, could qualify as special, rather than direct, damages. Out of an abundance of caution, I will also construe plaintiff's special damages claim to include the medical expenses of over $12,000 that plaintiff allegedly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09711-GBD-HBP    Document 6-5    Filed 12/13/2007    Page 4 of 8

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)  
(Cite as: Not Reported in F.Supp.)

Page 3

incurred due to his family's and his own emotional distress and mental anguish. Am. Comp. ¶ 27-28. Nonetheless, as with the claim for lost profit, there is simply no indication that these damages were within the contemplation of the parties at the time that the contract was formed. Plaintiff does not assert that Chemical Bank knew of, or assumed liability for, plaintiff's expenses in travelling to the United States. Nor does plaintiff assert that Chemical Bank assumed liability for possible damages with respect to mental anguish arising out of the inability of plaintiff's family to take a planned vacation to Disney World. For these reasons, plaintiff cannot pursue a claim for the special damages asserted in the complaint.

*4 Finally, defendant argues that plaintiff's claim for $2,500,000 in punitive damages is not sustainable under a breach of contract. claim. Punitive damages may not be awarded in breach of contract cases unless public rights are implicated. _O.L. Bideau v. Ward_, 645 N.Y.S.2d 107, 110 (N.Y.App.Div.1996). Even where fraud is alleged, a plaintiff may recover punitive damages only when the fraud is aimed at the public generally, and is gross and involves high moral culpability. _Walker v. Sheldon_, 10 N.Y.2d 401, 405, 179 N.E.2d 497, 499, 223 N.Y.S.2d 488, 491 (N.Y.1961). There is no assertion here that Chemical Bank's alleged conduct was aimed at the public generally; rather, it seems clear that its alleged conduct was directed at plaintiff individually. For that reason, plaintiff may not recover punitive damages in this action.

Although the damages claims supported by plaintiff's breach of contract claim are insufficient to meet the amount in controversy requirement of the diversity statute, the Court must consider Nwachukwu's claims in the aggregate to determine whether the amount in controversy requirement is met. _Airlines Reporting Corp. v. S And N Travel, Inc._, 857 F.Supp. 1043, 1048 (E.D.N.Y.1994), (citing 1 Moore's Federal Practice § 0.97[1] (1991)). I consider the remainder of Nwachukwu's causes of action in turn below, in order to determine whether any of them may support a damage claim that would meet the amount in controversy requirement of 28 U.S.C. § 1332(a).

2. Negligence

Plaintiff's second cause of action alleges failure to exercise reasonable care and commercial good faith, failure to establish or maintain adequate supervisory controls, and recklessness, carelessness, and negligence. As a general rule, no separate cause of action in tort arises out of a breach of contract. _Stella Flour & Feed Corp. v. National City Bank of New York_, 285 A.D. 182, 183-84, 136 N.Y.S.2d 139, 142 (N.Y.App.Div.1954). Insofar as plaintiff's second cause of action lies in negligence, "[a] cause of action for negligence cannot be based on a breach of a contractual duty." _Calisch Associates, Inc. v. Manufacturers Hanover Trust Co._, 151 A.D.2d 446, 447, 542 N.Y.S.2d 644, 645 (N.Y.App.Div.1989). Therefore, the bulk of plaintiff's claims in his second cause of action are not cognizable. However, the Court of Appeals of New York recognized a claim for commercial bad faith in _Prudential-Bache Securities, Inc. v. Citibank, N.A._, 73 N.Y.2d 263, 536 N.E.2d 1118, § 39 N.Y.S.2d 699 (N.Y.1989). I thus consider whether plaintiff's complaint adequately supports a claim of commercial bad faith.

In _Prudential-Bache_, the New York Court of Appeals indicated that a claim for commercial bad faith was appropriate "[w]here a depositary bank acts dishonestly-where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme." 73 N.Y.2d at 275. Specifically, the Court of Appeals observed that such dishonest conduct was actionable because it fell "outside the allocation of business risks that was contemplated" by the provision of the Uniform Commercial Code applicable to the case. _Id._ The dishonest conduct at issue in _Prudential-Bache_ consisted of the actions of two employees of defendant Citibank who accepted bribes to open and service illegal accounts that were part of an embezzlement scheme. The Court of Appeals found that such conduct constituted a sufficient basis for the assertion of a claim of commercial bad faith to withstand dismissal of the complaint.

*5 In contrast, in _Calisch_, the Appellate Division, First Department, considered whether a bank could be liable under a claim of commercial bad faith based upon allegations that the bank acted in bad faith "by failing to perceive that a fraud was in progress either because one of its employees was conspiring with [an embezzling employee of plaintiff] or by not adequately training and supervising its employees regarding proper bank procedures." _Calisch_, 151 A.D.2d 446, 448. The court found that, "[a]t most, these allegations amount to a claim that defendant bank was negligent in not being sufficiently vigilant and/or not providing satisfactory instruction to its staff," neither of which is a viable claim under New

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 4

York law. *Id.* at 448.

The case at bar involves allegations of conduct falling between the viable claim in *Prudential-Bache,* alleging gross embezzlement, and the impermissible claim in *Calisch,* alleging illegal conduct by a bank employee. It is clear from plaintiff's memorandum of law in opposition to the motion to dismiss that the gravamen of his negligence claim is his allegation that bank employees failed to exercise the proper care and diligence in comparing the signature used to make debits to plaintiff's account and plaintiff's signature card on file with the bank. Pl. Mem. in Opp. at 15-17. As stated above, however, New York law does not permit the assertion of such a claim. Plaintiff's sole actionable allegation with respect to a claim of commercial bad faith states, "[u]pon information and belief, the debits by defendant from plaintiff's account are the result of an illegal conspiracy between one or more employees of defendant for the purpose of maliciously depriving plaintiff of the funds on deposit in plaintiff's account." Am. Comp. ¶ 23.[FN5] Plaintiff's vague assertion of a conspiracy fails to meet the requirements of *Prudential-Bache;* rather, the assertion brings this action within the ambit of *Calisch.* Therefore, the commercial bad faith claim, based on an allegation of conspiracy among bank employees, is not legally sufficient.

Additionally, I note that even were plaintiff's allegations sufficient to meet the standard of *Prudential-Bache,* the allegation of a conspiracy is a legal, not a factual, allegation. As such, the Court does not give plaintiff's assertion of a conspiracy the presumption of truthfulness granted to factual allegations. The factual allegations here are that plaintiff's signature on file with defendant differed dramatically from the signature on the debit requests which defendant honored. The Court resolves all reasonable inferences in favor of the plaintiff. However, I do not find that it is reasonable to infer, from the differences in signatures, that bank employees were engaged in a conspiracy. For the foregoing reasons, I dismiss plaintiff's second cause of action, for negligence, with prejudice.

*3. Conversion*

An action for converting money may be asserted only when "there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 A.D.2d 113, 124, 559 N.Y.S.2d 704, 712 (N.Y.App.Div.1990), *appeal denied,* 77 N.Y.2d 803, 569 N.E.2d 874, 568 N.Y.S.2d 15 (N.Y.1991). The relationship between a bank and a depositor is that of debtor and creditor. Under law, funds deposited in a bank become the property of the bank, and the bank becomes indebted to the depositor for the amount of the funds deposited. *Calisch,* 151 A.D.2d at 448. Therefore, a conversion claim, predicated on the unlawful use of funds belonging to another, is not sustainable between a bank and a depositor with a standard debtor-creditor relationship.

*6 Plaintiff notes that courts have distinguished between general deposits and special deposits, treating general deposits as giving rise to a debtor-creditor relationship between the bank and depositor, and treating special deposits as giving rise to a bailment. In the latter situation, the depositor retains possession of the deposit, while the bank acts as bailee or agent. Therefore, in the latter situation, a conversion claim could be sustainable due to the depositor's property right to the funds at issue.

A deposit in a regular bank account is presumed to be a general deposit; the burden of overcoming that presumption is on the party who alleges that the deposit is special. *Peoples Westchester Savings Bank v. Federal Deposit Insurance Corp.,* 961 F.2d 327, 330 (2d Cir.1992) (quoting *Keyes v. Paducah & I.R. Co.,* 61 F.2d 611, 613 (6th Cir.1932)); *Wasserman v. Broderick,* 140 Misc. 174, 176, 250 N.Y.S. 84, 87 (N.Y.Sup.Ct.1931). In order to determine whether an account is special or general, "[c]ourts look to all of the circumstances surrounding the creation of an account." *Swan Brewery Co. Ltd. v. United States Trust Co. of New York,* 832 F.Supp. 714, 719 (S.D.N.Y.1993). The fact that funds are deposited for a special purpose does not necessarily determine whether the account is special or general. *Id.* One factor that courts have found determinative of an account's status is whether the depositor made a request that the funds be kept separate from the bank's other funds, *see Wasserman,* 140 Misc. at 175, and whether the bank actually held the funds apart from its other funds. *See Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 561 (2d Cir.1976). Additionally, "the fact that a bank pays interest on an account, while not dispositive, 'is very strong evidence that the title to the money deposited passed out of the depositor by the act of making the deposit,' and thus, the creation of a general deposit was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09711-GBD-HBP   Document 6-5   Filed 12/13/2007   Page 6 of 8

Not Reported in F.Supp.   Page 5
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

intended by the parties." *Peoples Westchester Savings Bank,* 961 F.2d at 331 (quoting *Swan v. Children's Home Society,* 67 F.2d 84, 87 (4th Cir.1933)). The premise underlying that conclusion is that a depositor receives interest in exchange for loaning funds to a bank for the bank's own investments. *Id.*

In this action, plaintiff alleges that he opened the account at Chemical Bank in order to "make a specific deposit of $40,000 for his business and vacation purposes while in the United States." Am. Comp. ¶ 6. Plaintiff alleges that he "further informed defendant that he ... needed to safeguard the sum of $40,000.00, in an account in the United States, because of Nigeria's depressed economic condition, which creates the unavailability and/or scarcity of foreign exchange (particularly U.S. [sic] dollars) in the country." Am. Comp. ¶ 7. Plaintiff also alleges that he opened the account with Chemical Bank "on the understanding that the funds will be bearing interest, be for the specific purpose of plaintiff's vacation and business needs while he is in the United States and be safeguarded for a minimum of three years." Am. Comp. ¶ 8.

*7 Plaintiff does *not* assert that he ever requested that the funds be segregated from the bank's other funds. Additionally, plaintiff's stated expectation that the funds would bear interest supports a finding that he understood that the funds, while on deposit at the bank, were to be used by the bank for its own investments. *See Peoples Westchester Savings Bank,* 961 F.2d at 331. Moreover, plaintiff's bald assertion that he informed defendant of his purpose in opening the account is simply insufficient to overcome the presumption of a general account. Plaintiff's repeated insertion of the word "specific" cannot cure this defect. For that reason, I find that plaintiff has failed adequately to plead facts supporting a conclusion that his account at Chemical Bank is a special account. Therefore, as a matter of law, plaintiff cannot assert a conversion claim against defendant. For that reason, I dismiss plaintiff's third cause of action, for conversion, with prejudice.

*4. Intentional Infliction of Emotional Distress*

Plaintiff's fourth cause of action, for intentional infliction of emotional distress, is based on plaintiff's allegations that defendant accused him of theft, threatened to have police arrest him, and attempted to subject plaintiff to a lie detector test. In New York, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause, or disregard of substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. The requirements for the tort are "rigorous, and difficult to satisfy." *Howell v. New York Post Co., Inc.,* 81 N.Y.2d 115, 123, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 353 (N.Y.1993), (quoting Prosser & Keeton, Torts § 12, at 60-61 (5th Ed.)). Liability for the tort is "found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.,* (quoting *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86, (N.Y.1983) (quoting Restatement (Second) of Torts § 46, comment d.))

Simply put, none of the conduct alleged by plaintiff satisfies New York's rigorous standard for outrageous conduct. Defendant allegedly accused plaintiff of criminal conduct; an accusation of criminal conduct is not sufficiently outrageous to warrant a finding of intentional infliction of emotional distress. *See Coliniatis v. Dimas,* 848 F.Supp. 462, 470 (S.D.N.Y.1994) ("allegations of criminal conduct cannot be viewed as so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency"). Additionally, defendant allegedly threatened plaintiff with arrest and requested that plaintiff submit to a lie detector test [FN6] to prove that he had not made the withdrawals from his account himself. Am. Comp. ¶ 22. Neither of these actions meets the very high standard for outrageous conduct required by the New York, courts. For that reason, I dismiss with prejudice plaintiff's fourth cause of action, for intentional infliction of emotional distress, based upon its legal insufficiency.

*5. Money Had and Received*

*8 Under New York law, a plaintiff may bring an action for money had and received when, in the absence of an agreement, one party possesses money, belonging to another, that in equity and good conscience the party should not retain. *Parsa v. State of New York,* 64 N.Y.2d 143, 148, 474 N.E.2d 235, 237, 485 N.Y.S.2d 27, 29 (N.Y.1984). An action for money had and received is predicated upon the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-09711-GBD-HBP   Document 6-5   Filed 12/13/2007   Page 7 of 8

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

Page 6

existence of an implied or quasi contract. However, "[a] contract: cannot be implied in fact where there is an express contract covering the subject matter involved." *Julien J. Studley, Inc. v. New York News. Inc.*, 70 N.Y.2d 628, 512 N.E.2d 300, 518 N.Y.S.2d 779 (N.Y.1987). Here, the parties' relationship is governed by an express contract regarding plaintiff's bank account. The existence of an express contract therefore precludes plaintiff's assertion of a claim based upon an implied contract. *See Apfel v. Prudential-Bache Securities, Inc.* 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (N.Y.1993). For that reason, I dismiss with prejudice plaintiff's fifth cause of action, for money had and received.

### 6. Punitive Damages

In the complaint, plaintiff's sixth claim for relief requests attorneys' fees and punitive damages. This sixth claim does not appear to allege a cause of action, as distinct from a claim for relief, in his complaint. However, in his Memorandum in Opposition to the Motion to Dismiss, plaintiff indicates that his sixth cause of action is "against a bank that refuses upon demand to return ... money deposited." Although plaintiff correctly notes that a party is allowed to assert multiple claims, plaintiff's sixth cause of action does not assert a claim at all. Rather, plaintiff merely states a set of facts that could form the basis for a statutory or common-law cause of action. Because plaintiff's sixth claim for relief does not state a cause of action, I dismiss the sixth claim for relief with prejudice.[FN7]

### III. Conclusion

For the foregoing reasons, I hereby dismiss with prejudice plaintiff's second, third, fourth, fifth, and sixth causes of action, for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Because plaintiff's first cause of action supports a claim for damages in the amount of $38,041.30 plus interest, and because that amount fails to satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a), I dismiss plaintiff's first cause of action without prejudice for lack of subject matter jurisdiction. I therefore grant defendant's motion in its entirety, and order the Clerk of Court to close this case. Any pending motions in this case are now moot.

SO ORDERED:

FN1. The Court uses Nwachukwu's stated figures. Nonetheless, on a mathematical note, the Court observes that plaintiff alleges two debits altogether, in the sums of $13,531.00 and $24,509.92. Am. Comp. ¶ 12, 19. Plaintiff states that those two sums *include* federal withholding debits of, respectively, $13.38 and $9.92. The total of the two debits equals $38,040.92.

FN2. Indeed, plaintiff's most recent account statement at the time of the filing of this motion, for the period September 14, 1996 to October 11, 1996, shows an ending account balance of $6,055.91. Def. Mtn. to Dismiss, Ex. 3.

FN3. I consider the claim for $1,000,000 in general damages separately from the claim for $1,000,000 in consequential damages (lost profits).

FN4. Plaintiff does not appear to contend, nor could he, that the lost interest on the $38,041.30 raises the amount of direct damages to over $50,000.

FN5. In an affidavit in support of plaintiff's opposition to defendant's motion, plaintiff's counsel states that "[i]n view of the glaring dissimilarity between plaintiff's specimen signature and the signatures on Exhibit C [the requests for debits to plaintiff's account], I believe that there must have been some complicity involving defendant and/or its employees in order for the debits in question to take place." Eke-Nweke Aff. at ¶ 9.

FN6. In plaintiff's memorandum of law in opposition to the motion to dismiss, plaintiff's counsel states that defendant "attempt[ed] to subject plaintiff to a lie detector test." I rely upon the complaint's representation of defendant's actions, as a "request," rather than the memorandum's representation, as an "attempt[ ] to subject."

FN7. Most likely, the stated facts support a claim for breach of contract, which plaintiff asserted as his first claim for relief. Am. Comp. ¶ 32-36. Therefore, even assuming

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Page 7

that the stated facts were sufficient to constitute a cause of action, plaintiff's sixth claim for relief is redundant and should be dismissed.

I note, additionally, that there exists no independent cause of action for punitive damages or attorneys' fees. To the extent that plaintiff's sixth claim for relief is intended as an independent claim for punitive damages or attorneys' fees, I dismiss that claim with prejudice.

S.D.N.Y.,1997.
Nwachukwu v. Chemical Bank
Not Reported in F.Supp., 1997 WL 441941 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.