# EXHIBIT 1

STORCH AMINI MUNVES PC
A New York Professional Corporation

LITA BETH WRIGHT
Member NY and NJ Bars

June 14, 2007

**BY FACSIMILE**
Honorable Frederic Block
United States District Court, E.D.N.Y.
225 Cadman Plaza East
Brooklyn, NY 11201

Re: <u>Goltens - New York Corp. v. Golten; 07 Civ. 01545 (FB)(M\_</u>

Dear Judge Block:

As counsel for defendant Norman Golten in the above-referenced action, and pursuant to Your Honor's individual rules, we request a pre-motion conference with the Court to seek permission to file a motion to dismiss the Complaint pursuant to Rule 12(b)(1) and (6).

The Complaint filed by plaintiffs Goltens – New York Corp. ("Goltens NY") and Goltens Worldwide Management Corp ("GWMC") in this diversity action alleges that Mr. Golten, a 40% shareholder of Goltens NY, breached a written contract with GMWC,[1] pursuant to which he served as President of Goltens New York Corp. in a non-executive capacity (the "Agreement"), resulting in unspecified damages. ("Compl." ¶¶ 1, 10-14).[2] Mr. Golten's alleged breaches include: (1) demeaning and interfering with the work of members of management; (2) holding himself out as having authority to sell the Goltens Companies; (3) disregarding instructions from the board of directors and officers of the Goltens Companies not to engage in such discussion; and (4) divulging confidential information about the Goltens Compan___ competitors. As a result of the alleged breaches, plaintiffs seek to recover $1,000,000 in sa___y and benefits paid to Mr. Golten between 1999 and 2003[3] in connection with consulting services that he, by their own account, admittedly provided to the Goltens Companies. (Complt. ¶¶ 6-8). Plaintiffs also claim

---

[1] GWMC is a wholly owned subsidiary of Goltens NY, and is the management arm of a series of closely held family corporations that were established in New York and Olso in the 1940s, collectively referred to herein as the "Goltens Companies."
[2] A copy of the Complaint is enclosed herewith as Exhibit A.
[3] We note that, according to the contract attached to the Complaint, at least two years of the payments were made prior to April 13, 2001, and are therefore barred by New York's six year statute of limitations for a breach of contract claim. N.Y. C.P.L.R. 213.

2 Grand Central Tower  New York, New York 10017  Tel: 212.497.8207  Fax: 212.490.4208  E-mail: lbwright@samlegal.com
Washington, DC   Garden City, NY   South River, NJ

Honorable Frederic Block
June 14, 2007
Page 2

they suffered unspecified damages for lost business opportunities caused by and management time purportedly expended in connection with the above-enumerated breaches.

A. **The Complaint Fails to Allege a Good Faith Basis for Subject Matter Jurisdiction**

Federal courts have diversity jurisdiction when the dispute is between citizens of different states and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). While the amount pleaded generally controls if it appears to be in good faith, "if it appears to a legal certainty that the amount in dispute is really less than the jurisdictional requirement, dismissal is justified." See Weichart v. Tommie, 2006 WL 3782707, *1 (N.D.N.Y. Dec. 21, 2006). When the amount in controversy is challenged, the burden falls on the proponent of jurisdiction to show that the amount in controversy requirement has been met by a reasonable probability. See id.

Here, three categories of damages are alleged. The only category alleged with specificity is the $1,000,000 in payments made in salary and benefits under the agreement. Complt. ¶ 18). The other two categories are lost business opportunities and management time, both of which are made in the most conclusory manner possible. Id. ¶¶ 13, 18. As explained below, the Complaint alleges no legal cognizable basis for plaintiffs' attempt to disgorge the $1,000,000 in payments. (Compl. ¶ 18). Without that category of damages, the remaining categories of damages alleged are at most speculative. At worst, they are legally deficient in that they are consequential in nature and plaintiffs have failed to allege, because in good faith they cannot, that they were reasonably foreseeable and within the contemplation of the parties at the time the contract was made.

According to the Complaint, the contract at issue provides for payment of salary and benefits to Mr. Golten, (Complt. ¶¶ 6-7), which they now seek to recover from him as a result of the alleged breaches of contract. However, plaintiffs have not alleged facts showing that the payment of the $1,000,000 paid to Mr. Golten (admittedly for services he provided to the Goltens Companies) is traceable to the breaches alleged. (Complt. ¶ 10).[4] See Young v. U.S. Dep't of Justice, 882 F.2d 633, 641 (2d Cir. 1989) ("recovery in contract, unlike recovery in tort, allows only for economic losses flowing directly from the breach."). That is because they are not causally connected. Indeed, the Complaint alleges that that Mr. Golten actually performed such duties as he was asked to perform under the contract. (Complt. ¶ 8). When a plaintiff fails to plead facts establishing that the $1,000,000 paid constitutes economic loss flowing directly from the breach, the claim for such damages fails as a matter of law.

---

[4] In essence, plaintiffs are attempting to rescind the Agreement, the purported breach of which is their sole basis for seeking other, unspecified damages. However, an action for rescission is only available where there is no adequate remedy at law. Bristol Oaks, L.P. v. Citibank, N.A., 272 A.D.2d 258, 259 (1st Dep't 2000). Plaintiffs have a legal remedy in the form of compensatory damages. Furthermore, where a party accepts and realizes the benefits under a contract, it is estopped from seeking rescission of that contract. United States v. Schlesinger, 404 F. Supp. 77, 87 (E.D.N.Y. 1975). Plaintiffs have admitted in the Complaint that Mr. Golten performed the services he was asked to for the salary and benefits paid, and cannot now seek to rescind it. Additionally, the right to rescind a contract must be timely exercised after the injured party knows of the wrong justifying rescission. N.Y. Tel. Co. v. Jamestown Tel. Corp., 282 N.Y. 365, 372-73 (1940). Since plaintiffs failed to allege when the purported breaches of the Agreement were made known, one is unable to determine whether plaintiffs waived any right to rescission.

Honorable Frederic Block
June 14, 2007
Page 3

The Complaint fails to allege sufficient facts under Rule 8(b) of the damages that purportedly flow directly from the breach, i.e., lost business opportunities and loss of management time. The Complaint admits that the amounts "cannot be quantified at this time" but plaintiff speculates that they total at least "millions of dollars." The Complaint is bereft of any detail about the alleged lost business opportunities or management time supposedly spent dealing with the alleged breaches that would constitute a good faith allegation that damages supposedly sustained exceed the jurisdictional amount, much less "millions of dollars." Accordingly, on it face, the Complaint fails to allege the requisite facts required to establish the jurisdictional amount, and it should be dismissed. See In re JetBlue Airways Corp. Privacy Litigation, 379 F. Supp.2d 299, 326-27 (E.D.N.Y. 2003) (conclusory allegations of damages are insufficient to support a cause of action for breach of contract).

B.  **The Complaint Fails to State the Requisite Elements of a Breach of Contract Claim**

To provide adequate notice under Rule 8(a) in a breach of contract action, a plaintiff "must properly allege the basic details of the claim – i.e., when the breach occurred, what the breach consisted of, and how or in what manner the breach occurred." OneBeacon Ins. Co. v. Forman Int'l, Ltd., No. 04-2271, 2005 WL 100849, at *6 (S.D.N.Y. Jan. 19, 2005); see also Swierkiewitz v. Sorema N.A., 534 U.S. 506, 512 (2002) (even under Rule 8(a), the complaint must provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests."). As shown below, the Complaint falls far short of this legal mark.

The first three breaches alleged essentially boil down to Mr. Golten having supposedly held "himself out to persons as having the executive capacity of President . . . ." and with authority to sell the Goltens Companies. (Complt. ¶ 10(a)-(c)). The fourth and sixth breaches alleged are more of the same – that that Mr. Golten disregarded "instructions from the Board of Directors and chief operating officers of the Golten Companies not to hold himself out" as having executive authority. (Id. ¶ 10(d) and (f)). These allegations fail to inform Mr. Golten when or how each alleged breach occurred and are legally insufficient to put him notice of the charges lodged against him, and should be dismissed. See OneBeacon Ins. Co., 2005 WL 100849, at *6; see also Sorema, 534 U.S. at 512. The fifth breach alleged is that Mr. Golten "improperly divulg[ed] confidential information about the Golten Companies", (id. ¶ 10(e)), even though the Agreement, which is attached as an exhibit to the Complaint, (id., Exh. A), contains no provisions obligating Golten to keep certain information confidential. To the extent the contract claim rests on this allegation, it should be dismissed for that reason alone.

Accordingly, Golten respectfully requests a pre-motion conference to seek leave to move to dismiss the Complaint on the aforementioned grounds.

Respectfully submitted,

*[signature]*

Lita Beth Wright

cc:   Thomas A. Brown, II, Esq. (*by facsimile*)
      Mr. Norman Golten (*by facsimile*)

Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GOLTENS-NEW YORK CORP. and GOLTENS
WORLDWIDE MANAGEMENT CORP.,

                Plaintiffs,        :   07 Civ._____

- against -                          **COMPLAINT**

NORMAN GOLTEN,

                                      **PLAINTIFFS REQUEST**
                Defendant.        **TRIAL BY JURY**
-------------------------------------------------------------x

Plaintiffs Goltens-New York Corp. and Goltens Worldwide Management Corp., by their attorneys Orans Elsen & Lupert LLP, as and for their complaint against defendant Norman Golten allege as follows:

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 13 2007 ★

BROOKLYN OFFICE

### Nature of The Claim

1. This is a breach of contract action based on diversity of citizenship. Although defendant entered into a contract promising that he would refrain from involving himself in the operations of a group of closely-held corporations, he has repeatedly breached this and numerous other contractual obligations, resulting in damages to plaintiffs totaling millions of dollars.

### The Parties

2. Plaintiff Goltens Worldwide Management Corp. ("GWMC") is a New Jersey Corporation with its principal place of business in Manasquan, New Jersey. GWMC manages a number of related companies including Plaintiff Goltens-N.Y. Corp. ("Goltens N.Y."), a New York corporation with its principal place of business in Brooklyn, New York. The group of related companies is referred to herein as the "Goltens Companies." The Goltens Companies have

operations in numerous places around the world and provide, among other things, repair, maintenance and related services for large ocean going vessels and industrial power stations.

3. Upon information and belief, defendant Norman Golten ("Norman") is a citizen and resident of the State of Florida.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction pursuant to (a) 28 U.S.C. § 1332(a) because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and (b) 28 U.S.C. § 1332(a)(1) in that there is diversity of citizenship. GWMC is incorporated in New Jersey and Goltens N.Y. is incorporated in New York, each with its principal place of business located in its state of incorporation, and upon information and belief, the defendant is and holds himself out to be a citizen and resident of Florida.

5. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(a)(2) because the performance and many of the breaches of the contract at issue occurred in Brooklyn, New York.

### Facts

6. Prior to February 1999, Norman was the president of Goltens N.Y. and de facto chief executive officer for the Goltens Companies. In or about February 1999, GWMC and Goltens N.Y. entered into an agreement dated January 28, 1999 with Norman, a true and exact copy of which is attached hereto as exhibit 1 (hereinafter referred to as the "Agreement"). Pursuant to the Agreement, the parties agreed that Norman would retain the title of "President" of Goltens N.Y., "but you [Norman] would hold your title and office in a non-executive capacity...." The

2

Agreement further provided that Norman "would not have check-signing authority or other general authority to bind the Company [Goltens N.Y.], except as specifically authorized from time to time by the Board of Directors of the Company." Additionally the Agreement defined and limited his duties to "assisting and advising the Company with union relations and with development and operation of the Company's internet website, both as requested by the [sic] me or by a Chief Executive Officer elected by the Board of Directors of the Company." Norman had no other defined duties and neither the Chief Executive Officer n... Boards of Directors of GWMC and Goltens N.Y. ever authorized him to perform additional duties for the Company.

7. The Agreement, which is continuing, further provided for payments to Norman of $150,000 per year for five years, plus specified benefits totaling in excess of $250,000. The monetary value of the Agreement to Norman, which Goltens N.Y. has paid in full, was in excess of $1,000,000.

8. The Agreement was negotiated in part by Norman from his office at Goltens N.Y. in Brooklyn and is addressed to Norman at an address in Brooklyn, which he still maintains. Moreover, he received many of the payments required by the Agre    by checks that were delivered to him at Goltens N.Y. in Brooklyn. Such limited duties as Norman was asked to perform under the Agreement were to be and were actually performed by him at Goltens N.Y. in Brooklyn. Many of the breaches of the Agreement detailed below also took place in Brooklyn and Norman regularly sent correspondence from the Goltens N.Y. office in Brooklyn, some of which constituted a breach of his contractual obligations.

9. Pursuant to the Agreement, Norman has continuously held himself out to date as President and has maintained an office to date with that title on the door at Goltens N.Y. in Brooklyn.

3

10. After executing the Agreement, upon information and belief, Norman materially breached the Agreement in numerous ways, including, but not limited to, the following:

   a. holding himself out to persons as having the executive capacity of President when the Agreement expressly states that he may not do so;

   b. improperly acting as if he were a President with executive capacity in discussions with persons and companies about them acquiring the business owned by the Goltens Companies;

   c. upon information and belief, holding himself out as having authority to sell the Goltens Companies;

   d. disregarding instructions from the Board of Directors and chief operating officers of the Goltens Companies not to hold himself out as set forth in paragraphs a through c above;

   e. improperly divulging confidential information about the Goltens Companies to persons and companies who were not entitled to this information, including certain companies that are and have been direct competitors of the Goltens Companies; and

   f. directly interfering with the management of the Goltens Companies by acting as if he had the executive capacity of a President. These actions included, but are not limited to, attempting to set policy, instructing managers of the facilities owned by the Goltens Companies as to what actions they should or should not take, and disparaging senior management of the Goltens Companies to employees of those Companies and others.

11. At no time has the chief executive officer or board of directors of either GWMC or Goltens N.Y. authorized or approved the actions set forth in paragraph 10 of this Complaint; to the

4

contrary, Norman has repeatedly been instructed to cease and desist from these actions, to no avail.

12. Upon information and belief, as a result of Norman's improper conduct in breach of the Agreement, as set forth in this Complaint, substantial business and business opportunities have been lost and are continuing to be lost, which cannot be quantified at this time, but total at least millions of dollars.

13. Upon information and belief, as a result of Norman's improper conduct in breach of the Agreement, as set forth in this Complaint, competitors of the Goltens Companies learned the names of key employees of several Goltens Companies, as well as details about the operation of those Companies. Upon information and belief, these competitors used this information to solicit employees and customers of the Goltens Companies to the detriment of the Goltens Companies. As a result, substantial business and business opportunities have been lost and are continuing to be lost, which cannot be quantified at this time, but total at least millions of dollars.

14. In addition to the aforesaid loss of employees and business, considerable management time has had to be expended and is being expended in responding to Norman's breaches of the Agreement and in locating replacements for these employees and restoring the lost business, which time should have been spent in more productive work. Plaintiffs are entitled to damages for the loss of management time in an amount to be quantified.

### Count One: Breach of Contract

15. Plaintiffs repeat and reallege the allegations contained in paragraph through 14 as though fully set forth herein.

16. Defendant Norman Golten entered into a binding contract with plaintiffs as set forth in Exhibit 1 hereto.

17. Plaintiffs fully complied with their contractual obligations, while detailed above, Norman materially breached his contractual obligations.

18. As a result of the material breaches of his contractual obligations, Norman has caused GWMC and Goltens N.Y. to suffer damages, including in excess of $1,000,000 representing the amounts he has been paid or received as benefits to date under the Agreement, plus such sums as are determined at trial for loss of business, business opportunities and employees, and lost management time, the exact amount of which is unknown at present but is at least millions of dollars.

WHEREFORE, Plaintiffs request Judgment in their favor and against Defendant as follows:

    A. For compensatory damages in an amount in excess of $1,000,000, the exact amount to be determined at trial;

    B. For such additional sums as a Court finds due for loss of business, business opportunities and employees, and lost management time;

    C. For pre- and post-judgment interest as permitted by law;

    D. For the costs and legal expenses incurred in this suit; and

    E. For such other and further relief as the Court deems just and appropriate.

Dated: April 13, 2007                     ORANS, ELSEN & LUPERT LLP

                                          By: _____

                                          Thomas A. Brown II (TB 1642)
                                          Leslie A. Lupert (LL 0955)
                                          875 Third Avenue, 28th Floor
                                          New York, New York 10022
                                          (212) 586-2211


                                          *Attorneys for Plaintiffs*

1



# Goltens WORLDWIDE

50 Route 46 • Suite 200
Parsippany, N.J. 07054
(973) 808-2228 • Fax (973) 808-2015

January 28, 1999

Mr. Norman S. Golten
2406 National Drive
Brooklyn, NY 11234

Dear Norman:

Further to the discussions that you have had with Larry Rose and with me over the last several weeks concerning your future role and employment with Goltens-New York Corp. (the "Company"), the following is an outline of terms that I would be prepared to present and recommend to the Company's shareholders. I understand that you and Larry have discussed this, and that you also are amenable to these arrangements:

1. You would be elected as an additional director of Golten Worldwide Management Corp.("GWMC"), as soon as the practical logistics of notices, meetings, etc. can be scheduled and accomplished.

2. You would agree to vote, again as soon as practicable, for a slate of directors of Goltens-New York Corp. (the "Board of Directors") consisting of the following persons: yourself, Sylvia Strand, Henry Kasper and me.

3. You would retain the title "President" of the Company, but would hold your title and office in a non-executive capacity, and you would report to me. You would not have check-signing authority or other general authority to bind the Company, except as specifically authorized from time to time by the Board of Directors of the Company.

4. You would surrender all outstanding corporate credit cards in your possession, and you would incur travel, entertainment and other business-related expenses only when specifically authorized by me or by a Chief Executive Officer elected by the Board of Directors of the Company.

5. Your duties would consist of assisting and advising the Company with union relations and with development and operation of the Company's internet website, both as requested by the me or by a Chief Executive Officer elected by the Board of Directors of the Company.

6. You would receive a salary of $150,000 for a period ending on the earliest of (a) December 31, 2003, (b) the date of sale of the business or assets of the Company or the Goltens Group of companies, or a sale or merger that results in a transfer of a controlling interest in the Company or the Golten Group of companies, (c) the date of liquidation of the Company, or (d) the completion of a public offering of the stock of the Company or a public offering of stock representing interests in the Golten Group of companies.

NY:52440.2



Affiliated Companies in Miami • Wilmington and Fontana, Cal. • Fairhaven, Mass.
New York • Oslo • Rotterdam • Hong Kong • Singapore • Jakarta • Dubai

*For benefits under the Company profit sharing plan*

Mr. Norman S. Golten
January 28, 1999
Page 2

7.    In addition to your salary, and for the same period, you would be paid a car allowance covering the lease of a single automobile and expenses relating to its operation, including insurance, gasoline, repairs, and similar expenses. After the expiration of the current lease term on the Jaguar automobile that the company now leases for your use, the automobile furnished would be a Lincoln or Infinity or similar make, but not a Jaguar or other "super-luxury" automobile. You also would be eligible, during the period for which salary is payable as described above, for such health and life insurance benefits as are generally available to employees of the Company; and your office on the third floor of the Company's building will continue to be available for your use for the same period. You will not be eligible for any other benefits or perquisites, except as specifically described in this paragraph 7.

All of these terms are subject to approval by the shareholders of the Company and by the Board of Directors established in accordance with item 2 above. If you are in agreement with the above general terms, we would immediately take steps to elect a new Board of Directors of Goltens-New York Corp.; we would jointly recommend that the Board of Directors authorize your election to the board of GWMC and execution of a shareholder's consent to accomplish that; and you and the other shareholders of Goltens New York Corp. would execute all appropriate documentation to implement our agreement.

If you are in agreement with these terms, please sign and date ~~ of this letter where indicated below, and return it to me at your earliest convenience.

Norman, I am pleased that we have been able to work out an acceptable arrangement for your role with the company, and I look forward to our working together to foster the continued growth and success of the Golten Group.

With best regards,

Sincerely,

*Edwin Silverstone*

Edwin Silverstone

Acknowledged and agreed:

*Norman S. Golten*

Norman S. Golten

Date: 2/10/99, 1999

NY:52440.2